IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Robert S. Ricci, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 6100 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| Rohr-Max Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Ricci bought a car from Defendant Rohr-Max Inc., a used car dealership, and claims that Rohr-Max fraudulently misrepresented the mileage on the car. Ricci filed a five-count Complaint against Rohr-Max alleging that: the car was sold in violation of the federal odometer laws (Count I), Rohr-Max breached implied and express warranties (Counts IV and V), and Rohr-Max violated two state law claims for fraud (Counts II and III). Rohr-Max moved for summary judgment on the federal odometer claim because they had an "actual mileage disclosure" that showed no mileage discrepancy and there was no negligence or fraud on their part. They further moved for summary judgment based on Ricci's failure to notify them of any defects and because Ricci bought the car "as is." Rohr-Max asserts that the Court should not retain jurisdiction over the remaining state law claims (Counts II and III) because the amount in controversy is under $50,000, the amount required by the Magnusson-Moss Warranty Act.

Ricci, appearing pro se, filed a responsive pleading to the motion for summary judgment that fails to comply with the Fed. R. Civ. P. 56 even under the liberal standard applied to pro se plaintiffs. The Court has made a diligent effort in reviewing the materials supplied by Ricci in

spite of this failure and concludes there is no genuine issue of material fact as to Ricci's federal claims and that Rohr-Max's motion for summary judgment is granted on Counts I, IV, and V.

## I. Undisputed Material Facts

Rohr-Max purchased a 2007 Lincoln MKX from Car Max on May 27, 2013, for $15,000. (Def. 56.1 St. ¶ 7; Battista Aff. at ¶ 13.) Car Max disclosed 68,418 actual miles on the vehicle to Rohr-Max at the time. (Def. 56.1 St. ¶ 7.) On May 29, 2013, Rohr-Max performed a used car inspection of the brakes, oil level, tires, and tire treads. (Def. 56.1 St. ¶ 12.) When Rohr-Max inspected the odometer, the mileage was consistent with the disclosure made by Car Max. (Def. 56.1 St. ¶ 12.) Rohr-Max further found nothing unusual in the inspection. (*Id.*) At least three Carfax reports on the Lincoln reveal no odometer rollback evidence. (Def. 56.1 St. ¶ 8.)

On July 29, 2013, Ricci purchased the Lincoln from Rohr-Max for $18,250. (Def. 56.1 St. ¶¶ 3, 25.) On the day of purchase, Ricci signed an odometer disclosure from Rohr-Max stating that the Lincoln had 68,441 "actual miles." (Def. 56.1 St. ¶ 6.) Ricci also agreed to buy the car "As Is" without any express warranty or implied warranty, reflected both in the buyer's guide and the bill of sale. (Def. 56.1 St. ¶ 5.) Ricci never contacted Rohr-Max to make any complaints about the car before filing this lawsuit. (Def. 56.1 St. ¶ 13.)

Ricci obtained a law firm to file suit. He claims that he learned from a technician at Valvoline, an oil-change shop located in Wisconsin, sometime after he purchased the car, that the shop had serviced the Lincoln prior to Rohr-Max's purchase from Car Max and that according to the Valvoline records, when the Lincoln was last in the shop, the mileage was 187,697. (Compl. at ¶ 14; Def. 56.1 ¶ 17.) The law firm received the case two weeks before the

statute of limitations would run on the claim and as a result, they filed a Complaint against Defendants on July 10, 2015, to preserve the claim.[1]

Even before the Complaint was answered the parties arranged for an inspection of the vehicle at Bob Rohrman's Kenosha Nissan on August 5, 2015. (Def. 56.1 St. ¶ 14.) At the inspection, Ricci, his attorneys, Rohr-Max's corporate representative, Mark Battista, and Rohr-Max's attorneys were all present. The odometer showed 94,614 miles on the car. (Def. 56.1 St. ¶ 14.) The inspection also revealed that the odometer operated correctly, that the odometer cluster was the original, and that there was no evidence of tampering with the cluster box or the bolts around the odometer. (Def. 56.1 St. ¶ 14.) Three weeks after the inspection, Ricci's attorneys moved to withdraw from representing Ricci due to a conflict "not related to attorney fees." The Court required Ricci to appear in person at that motion hearing. At the hearing, Ricci's attorneys elucidated that in their professional opinion, they no longer assessed the case they had filed on behalf of Ricci in the same way that they had when they originally filed it to preserve the statute of limitations and they had explained this to Ricci but Ricci assessed the claim differently. They therefore sought to withdraw due to this inherent conflict. (Dkt. 18.) The Court granted the motion and then explained to Ricci that he would need to represent himself and directed him to contact the Pro Se Help desk on the 20th floor of the Federal Building in order to learn the proper procedures for representing himself and provided him with information regarding proceeding pro se.[2] The Court warned that Ricci would be obligated to follow the Court's rules of procedure.

---

[1] Ricci's former attorney explained this to the Court during a September 15, 2015 hearing on the law firm's motion to withdraw their appearances on behalf of Ricci.
[2] The September 15 hearing on Ricci's attorneys' motion to withdraw was continued to September 29, 2015. During the September 29 hearing, the Court granted the motion to withdraw and directed Ricci on proceeding pro se.

At no point prior to the filing of the suit did Ricci ever complain to Rohr-Max regarding the mileage discrepancy. In response to interrogatories, Ricci was asked to identify what steps, if any, he took to contact Rohr-Max regarding the alleged mileage discrepancy. Ricci responded, "I sought legal assistance once I became aware of the disc [sic]." (Battista Aff., Ex. C, Resp. No. 11.) Additionally, despite claims that the Lincoln is "worthless," (Resp. at 3), between the purchase and the August inspection, Ricci managed to put approximately 30,000 miles on the car. (Def. 56.1 St. ¶ 14.)

B. Ricci's Response to Summary Judgment

In spite of the Court's efforts to direct him to sources of support, Ricci failed to comply with the Northern District of Illinois' Local Rule 56.1. Although the filings of pro se litigants are subject to more liberal review and interpretation, a pro se plaintiff must still comply with the governing local rules of procedure. *See Dale v. Poston* 548 F.3d 563, 568 (7th Cir.2008) ("Judges, of course, must construe pro se pleadings liberally. But procedural rules cannot be ignored.") (internal citations omitted); *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) (declaring pro se plaintiff's failure to comply with Local Rule 56.1 is not excused by the rule that courts should construe the pleadings of pro se plaintiffs liberally); *see also* Local Rule 56.2, Notice to Pro Se Litigants Opposing Summary Judgment (stating plaintiffs must comply with Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1, available in the law library).

Ricci's response to the motion for summary judgment includes five sections: 1) Statement of Facts; 2) Summary Judgment Standard; 3) Argument; 4) Evidentiary Objections; and 5) Conclusion. None of these sections include "a concise response to the movant's statement that . . . contain[s] numbered paragraphs, each corresponding to and stating a concise summary

of the paragraph to which it is directed." L.R. 56.1(b)(3)(A). Ricci nevertheless responds to some facts, and adds some facts, in two of the sections of his Response, his "Statement of Facts," and the "Evidentiary Objections." In the "Statement of Facts" section, Ricci introduces the section by stating that the facts are "in response to the factual claims set forth in the moving party's Motion for Summary Judgment[.]" (Resp. at 2.) There are no short-numbered paragraphs in this section. Instead, the pleading consists of lengthy paragraphs of legal argument. For example, one of the "facts" is titled "Gross Negligence," and Ricci states that "The magnitude of [the mileage] discrepancy shows Rohr-Max's complete failure to exercise reasonable care during appraisal [sic] nothing less than gross negligence." (Resp. at 2.) In these paragraphs, Ricci cites to exhibits he attaches to his pleading. The majority of these exhibits, for reasons discussed below, constitute inadmissible hearsay.

In the "Evidentiary Objections" section, the format looks a bit more like a Rule 56 statement, but he still misses the mark. He does not actually reference the correct paragraph numbers from Rohr-Max's Rule 56 statement, and some of his recitations do not match the exact text of Rohr-Max's statements.[3] There also are no citations at all in these responses. *See* L.R. 56. 1(b)(3)(B) ("Responses must include, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon."); *see also Ammons v. Aramark Uniform Services, Inc*., 368 F.3d 809, 817 (7th Cir. 2004) (declaring adequate denial of a statement of fact must specifically admit or deny the relevant fact, cite to facts in support of the denial, and cite to specific references in an affidavit or other parts of the record that supports such a denial).

---

[3] For example, Factual Claim 10 that Ricci references is actually Rohr-Max's 56.1 St. ¶ 14—and even this doesn't exactly match what the 56.1 St. ¶ 14 says. There are also two "Factual Claim 10s."

Most importantly, none of Ricci's responses adequately dispute Rohr-Max's facts. For example, Ricci objects to Rohr-Max's statement that an inspection occurred on August 5, 2015, at Rohrman's Kenosha Nissan in front of Ricci, his previous attorneys, and Rohr-Max and their representatives, (Def. 56.1 St. ¶ 14): "[t]he fact that I was present, that the odometer operated properly, and that service department found no evidence of tampering is not in itself evidence that the odometer was not tampered with." (Resp. at 7.) Another example of Ricci's failure to adequately respond pertains to the statement that the car was sold to him "as is," (Def. 56.1 St. ¶ 15). Ricci responds that "[s]elling a vehicle as-is and with no warranties does not give the seller a license to misrepresent the mileage or condition of the vehicle." (Resp. at 7.) In short, Ricci does not dispute that, at the time of sale, the title was clean, Rohr-Max conducted an inspection, the Carfax and prior owner information revealed no discrepancy in mileage, and the car was sold "as is." (Def. 56.1 St. ¶ 16.).

In spite of his failure, the Court carefully combed the record for statements or exhibits that might place a material fact in dispute – something the Court was not required to do under the rule. In support of his motion for summary judgment, Ricci attached invoices from car repair and oil-change shops and an expert report from an expert who was never disclosed and withdrew from the case. Ricci also attached a declaration declaring the exhibits to be "true and correct," but on summary judgment, the Federal Rules of Civil Procedure "require[] affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (citing *Hadley v. County of Du Page,* 715 F.2d 1238, 1243 (7th Cir. 1983)).

Ricci relies on the invoice exhibits for two main points. First, he relies on invoices from an oil change shop that allegedly serviced the Lincoln prior to Ricci's purchase and recorded a

6

higher mileage on the car than Rohr-Max's odometer disclosure indicated at purchase. Second, he relies on invoices from auto-repair shops to show the amount of money he spent on repairs on the Lincoln. The records constitute hearsay. Hearsay, conclusory opinions, and suspicions are inadmissible in summary judgment proceedings to the same extent that they are inadmissible at trial. *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 497 (7th Cir. 2010). With the proper foundation, invoices from auto-shops might be admissible under the business records exception to the hearsay rule. On summary judgment however, the party offering a document as evidence under the business records exception must "attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000); *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (general rule is business records offered at summary judgment must be authenticated with an affidavit from a qualified person); *United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999) ("A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of regularly conducted business activity[.]"). The qualified person need not have prepared the record or have personal knowledge of individual entries on the record, but the person must possess knowledge of the procedure in which the records were created. *Collins v. D.J. Kibort*, 143 F.3d 331, 337–38 (7th Cir. 1998); *see also Overton v. City of Harvey*, 29 F. Supp. 2d 894, 902 (N.D. Ill. 1998) (party may not offer document under business records exception with their own testimony, unless shows that he or she has knowledge about how the records were created).

Ricci fails to attach any affidavits from qualified persons. In fact, in Ricci's Rule 26(a)(1) disclosure and Answers to Interrogatories, he stated that, "[t]he Plaintiff does not intend to call a live witness. The case presented will be based on written documentation." (Battista Aff., Ex. C.)[4] And Ricci's own declaration does not suffice because he has no personal knowledge of how any of these auto-shops regularly conduct business. Even if the Court were to ignore these hearsay deficiencies, the exhibits do not create a genuine issue of fact.

Regarding the oil-change shop invoices, three months after Ricci bought the Lincoln, he alleges that he brought the car to a service technician at a Valvoline shop in Wisconsin. (Resp. at 2; Compl. at ¶ 14.) Ricci alleges that the technician explained to Ricci that the Valvoline shop had previously serviced the Lincoln, and at that time the odometer reading was 187,697 miles. (Resp. at 2.) According to Ricci, the technician explained to him that this could not be a mistake because the VIN number is machine-read by a barcode scanner at each oil change, and the barcode is attached to the driver-side door frame by the vehicle manufacturer. (*Id.*) Ricci specifically relies on the October 26, 2013 invoice that states that the "last visit mileage: 187,697, current mileage: 71,943." (Ex. 19 at 43.) The invoice, Ricci asserts, indicates that the mileage had been tampered with at some point prior to his purchase of the Lincoln. Both the unidentified technician's statements and the invoice constitute hearsay. However, the Court will not strike the Valvoline exhibit indicating 187,697 miles because, while the invoice cannot be admitted for the truth of the matter asserted, the invoice may go to the exception of effect on the listener as Ricci's motive for filing the lawsuit. *See, e.g., Backwater, Inc. v. Penn-Am. Ins. Co.*, 448 F.3d 962, 965 (7th Cir. 2006) (citing *United States v. Inglese*, 282 F.3d 528, 538 (7th Cir.2002)) (out-of-court statements are not hearsay when offered to show the effect they have on

---

[4] Rohr-Max asserts that the magistrate judge warned Ricci during a status that he would not be able to rely on hearsay in his response to summary judgment.

the listener). Even setting aside the issue of hearsay, there is another problem undercutting this evidence. There are four additional invoices from Valvoline between January 18, 2014 and March 7, 2015 and during these subsequent visits, Valvoline recorded the "last visit mileage." In none of these subsequent visits does Valvoline base the number on the 187,697 Ricci asserts a Valvoline technician insisted was accurate. Instead, the "last visit mileage" is recorded as 71,943 on January 18, 2014 (Ex. 20), "last visit mileage" as 76,738 on June 1, 2014 (Ex. 21), "last visit mileage" as 78,928 on July 26, 2014 (Ex. 22), "last visit mileage" as 89,400 on March 7, 2015. Despite Ricci's assertion that Valvoline was certain the correct mileage was 187,697 on October 26, 2013, they did not base their "last visit mileage" on that number. In short, the one visit appears to be a complete anomaly and is negated by subsequent trips to the same source. It is further negated by the in-person inspection performed in Ricci's presence with his former attorneys.

Next, Ricci attaches nine additional invoices from three different auto-shops located in Wisconsin, which he asserts serviced the Lincoln over the course of nearly three years.[5] He summarizes these invoices in a chart that he put together, *see* Exhibit 18: "Maintenance History,"

---

[5] The following invoices were attached to Ricci's response. Exhibit 8: January 14, 2013 invoice from the Ewald Auto Group. Invoice lists "A check for smell in and around car, cust had a flat tire put spare on and car started to smell." The listed amount to be paid is $154.26. (Resp. at 32.) Exhibit 9: February 26, 2014 invoice from Heiser Ford Lincoln. The invoice states "page 2" at the top but does not have a page 1. The invoice lists charges for the replacement of axles. The listed amount to be paid $921.14. (Resp. at 33.) Exhibit 10: February 28, 2014 invoice from Heiser Ford Lincoln lists charges for the replacement of intermediate shaft and axle bearing. The listed amount to be paid $105.60. (Resp. at 34.) Exhibit 11: November 22, 2014 invoice from Midas for charges for "clean[ing] rims & re-mount & balance tires." The total charge was $110.34. (Resp. at 35.) Exhibit 12: January 15, 2016 invoice from Heiser Ford Lincoln, again stating "page 2," with no page 1, lists charges for wheel alignment, replacement of "lr abs sensor." The listed amount to be paid is $204.29. (Resp. at 36.) Exhibit 13: February 7, 2015 invoice from Heiser Ford Lincoln, lists "Replace left rear abs sensor." Invoice also includes "mirrors adjust randomly when shutting off engine, advise uav unable to verify any abnormal condition[.]" The listed amount to be paid is $127.73. (Resp. at 37.) Exhibit 14: March 7, 2015, invoice from Heiser Ford Lincoln, does not list any information as to what is being charged, only states a code under "part number" and lists a total of $61.74. (Resp. at 38.) Exhibit 15/16: June 3, 2015, invoice from Goodyear Auto Service Center, lists "Squealing while driving/sounds like" – no charge; suggest new tires. Charge was for "Disc Brake Hardware Kit." The listed amount to be paid is $74.79. (Resp. at 39-40.) Exhibit 17: October 10, 2015 invoice from Midas charging a total $1,008.38 for Ball joints ($320.00 / part) and alignment ($89.99).

total cost $2,768.77. (Resp. Ex. 18, at 42.) The columns in the chart include "symptom" and "cause." Several of the entries list "faulty installations," as the "cause" of the "symptom"; one of which explicitly states "Faulty installation by Ewald." Ewald is one of the auto-shops to which Ricci brought the Lincoln. By Ricci's own admission, at least some of these charges are the result of repair work that occurred while he was in possession of the vehicle, and have nothing to do with the age or condition of the car at the time he purchased it. Not only are the invoices hearsay, they lack foundation, and regardless, are irrelevant. Ricci bought a six-year-old car, and over the course of three years of owning the car and putting thirty thousand miles on it, he spent a little less than $3,000. This is not an amount that indicates the vehicle was in disrepair such that Rohr-Max should have known the car had far more miles on it than the odometer indicated.

Finally, Ricci presents an expert report from an individual that he never retained to be his expert. Expert disclosures and reports were due by August, 12, 2016. Ricci never asked for an extension on this deadline and never disclosed any expert or report. In his response to interrogatories, when Ricci stated that his case would not require witnesses but could be decided on "documentation," he further stated that "[p]art of that documentation will include an appraisal report written by an expert in used vehicle inspections and appraisals." (Battista Aff., Ex. C.) But Ricci never actually disclosed an expert witness or, as he refers to throughout his pleadings, an appraiser. Nevertheless, Ricci attached to his response exhibits from an expert, Phillip J. Grismer, allegedly retained for his lawsuit. The Grismer exhibits include: a Statement of Services and Invoice dated June 10, 2015, for payment of $300.00 (Resp. Ex. 1, at 15); an appraisal report, with the heading, "P.J.G. Consulting and Appraisal," (Resp. Ex. 2, at 16-17); and an "Observation & Opinion Appraisal Report." (Resp. Ex. 3, at 18-24.) There is also a perjury statement on the last page, with a signature block, but no signature is present on the

document. (Resp. at 24.) According to Rohr-Max, Ricci fails to mention "that the appraiser has withdrawn his agreement to testify in this case for Ricci, as of the date that Plaintiff's attorney withdrew his appearance." (Reply at 4.) There is no direct evidence of when the appraiser withdrew from the case. However, the failure to disclose anticipated expert testimony is a sufficient basis to strike the report.

A court may exclude expert testimony for failing to disclose that expert. *Keach v. U.S. Trust Co.,* 419 F.3d 626, 639 (7th Cir. 2005) ("A party shall not be permitted to use any information not so disclosed as evidence at a trial."); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998) (excluding expert testimony where reports were untimely and deficient); *Scaggs v. Consol. Rail Corp.,* 6 F.3d 1290, 1295 (7th Cir. 1993) (it is well within court's discretion to sanction party under Rule 37 by barring expert testimony). The purpose of initial disclosures in Federal Rule of Civil Procedure 26(a)(2) is to "avoid surprise and prejudice." *Finch v. Ford Motor Co.*, No. 03 C 4243, 2004 WL 2066917, at *1 (N.D. Ill. Aug. 27, 2004) (barring witness' Fed. R. Evid. 702 opinion testimony where not disclosed). Rule 26(a)(2) requires "a party to disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2). The Rule further requires that such disclosure "be made at the times and in the sequence directed by the court." *Id.* at 26(a)(2)(C). It follows then that evidence not disclosed pursuant to Fed. R. Civ. P. 26(a)(1) must be excluded. *Finch,* 2004 WL 206697 at *2 (citing *Miksis v. Howard*, 106 F.3d 754, 760 (7th Cir. 1997) ("Exclusion . . . automatic and mandatory, unless the party can show that the violation was either harmless or justified); *see also David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003) (sanction of exclusion mandatory but court has broad discretion to determine whether justified or harmless); *see also* Fed. R. Civ.

P. 37(c) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial . . . or on a motion any witness or information not so disclosed."). If a party is unable to retain an expert prior to the close of discovery, or other time dictated by the court, then that party must request relief from the court. *See Mannoia v. Farrow*, 476 F.3d 453, 456–57 (7th Cir. 2007) (affirming striking expert affidavit submitted at summary judgement stage where expert not disclosed).

Aside from his failure to disclose the report, the report lacks any indicia of reliability because the expert, Grismer, did not sign the report and withdrew from the litigation at the time that Ricci's attorneys withdrew. (Reply at 4.) There would be clear prejudice to Rohr-Max if Ricci were permitted to rely on the unsigned report of an undisclosed witness, particularly because Rohr-Max never had the opportunity to depose or examine Grismer, or to rebut his appraisal.

Finally, Ricci attaches a screen shot of online reviews of Rohr-Max. (Resp. Ex. 6, at 27). The online reviews are inadmissible because they are merely statements made by unknown individuals to prove the truth of his claims in violation of the rule against hearsay. Fed. R. Evid. 801-2.

Beyond the invoices, expert report, and screenshots, there are a few other exhibits in the record that do not pose the same admissibility problems. Ricci attaches photographs of the Lincoln, for which the Court presumes Ricci could lay the proper foundation. Ricci additionally attaches title documents from the state of Michigan, which taking all inferences in favor of Ricci, he could admit under the public records exception to the hearsay rule.[6] Additionally, Ricci

---

[6] Exhibit 24 is an application for Michigan Vehicle Title for a 2007 Lincoln that lists the seller as Lori Anne Draves-Reynaert, and the purchase date as April 10, 2013. (Resp. at 48.) The application lists odometer "067821." Exhibit

attaches a 2016 Carfax report that includes a "Mileage Inconsistency" showing 105,297 miles on September 29, 2009. (Resp. Ex. 38, at 66.) Although the Carfax report poses potential hearsay problems, the report may fit within the narrow exception to the general rule that a party seeking admission of the evidence under Rule 803(6) must submit supporting affidavits—when the opposing party relies on the same document for its accuracy. *Thanongsinh*, 462 F.3d at 777 (quoting *Woods*, 234 F.3d at 988). Rohr-Max does not rely on the 2016 Report, but also does not contest its admissibility and further Rohr-Max's corporate representative, Mark Battista, attests that Carfax is a reliable source of data regarding the history of vehicles and mileage reports and are generally relied on by the public and by the Bob Rohrman Auto Group (Rohr-Max d/b/a Bob Rohrman Auto Group), in particular. (Battista Aff. ¶¶ 16–17.) The Court, therefore, will consider these exhibits in its analysis.

## II. The Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986); *Omnicare Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir.2011); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir.2001). When a case comes before the Court on cross-motions for

---

25 is an application for Michigan Title & Registration Statement of Vehicle Sale on September 19, 2009, that lists Lori Anne Draves-Reynaert as the purchaser, and the odometer states 61,760. While these records indicate that only 6,000 miles were put on the car over the course of four years, they also confirm the Car Fax reports making it even more difficult to conceive of how Rohr-Max could have known there was fraud when the equally reasonable explanation based on all of the records and its inspection of the car indicated, simply, that the car was not driven much by the previous owner.

summary judgment, the Court must look to the burden of proof that each party would bear on an issue at trial and then require that party to go beyond the pleadings and establish through competent evidence a genuine issue of material fact. *See Santella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997) (citing *Celotex*, 477 U.S. at 324).

## III. Discussion

### A. Federal Odometer Act

Under the Motor Vehicle Information and Cost Savings Act ("Federal Odometer Act"), a transferor of a vehicle is required to disclose either the cumulative mileage registered on the odometer, or that the actual mileage is unknown if the transferor knows that the odometer reading is different from the actual number of miles the car has traveled. 49 U.S.C. § 32705. A plaintiff may recover under the Federal Odometer Act if the transferor has failed to disclose the accurate mileage with the intent to defraud the transferee. 49 U.S.C. § 32710. A transferor under this section is someone who "transfers ownership of a motor vehicle by sale, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferor." 49 C.F.R. § 580.3. Thus, in order to prevail under the Federal Odometer Act, the plaintiff must show both (1) a violation of the Act's odometer disclosure requirements (i.e., the provision of an inaccurate odometer reading), and (2) an intent to defraud specifically with respect to the odometer disclosure requirements. *Diersen v. Chicago Car Exchange*, 110 F.3d 481, 487 (7th Cir.1997) (citing *Jones v. Hanley Dawson Cadillac*, 848 F.2d 803, 808 (7th Cir. 1988).) Mere negligence is not enough. *Jones*, 848 F.2d at 808. A misrepresentation as to other issues, other than mileage, does not establish a violation. *Ioffe v. Sherman Dodge*, 414 F.3d 708, 712 (7th Cir. 2005) ("[T]here must be fraudulent intent as to the decision not to disclose the mileage on the title, not merely as to the decision to withhold

14

the certificate of title for reasons unrelated to the mileage disclosure."). Importantly, dealers are permitted to rely on the sworn odometer statement provided by the vehicle's previous owner at trade-in. *See Diersen*, 110 F.3d at 488 (noting, however, that a jury may be persuaded that such statements are erroneous based on other evidence).

All records before the Court discredit Ricci's mileage claim except the Valvoline oil change report that started this litigation and the 2016 CarFax report. Even this report, however, is discredited by the other Valvoline records submitted. Further, the Carfax report in 2016 disclaims that it may be subject to possible clerical error, and the oil-change documents raise issues of reliability because Ricci does not attach an affidavit or disclose any witness who can testify as to whether the odometer disclosures on the invoices are correct. But, even if the Court were to allow these reports to raise an issue of fact, Ricci must still show that a reasonable trier of fact could determine that Rohr-Max possessed the intent to defraud.

The primary issue is whether Rohr-Max's conduct constitutes intent to defraud. Rohr-Max is liable if it "knew or suspected" that its mileage disclosure was inaccurate. *Diersen*, 110 F.3d 488. Rohr-Max had no reason to think the mileage was suspect. They relied on the 2013 Carfax report containing a consistent mileage disclosure to the odometer reading at the time Ricci purchased the Lincoln. The vehicle was inspected by Rohr-Max after purchase from Car Max and found in good condition shortly before sale to Ricci. (Battista Aff., ¶ 20.) The vehicle was inspected again on August 5, 2015, two years after its sale, this time to specifically inspect the odometer, and no signs of odometer tampering was found, revealing that Ricci had driven 30,000 miles, and the Lincoln was running well. (R. 56 ¶ 14, Battista Aff. Ex. A at 20 and 25.)

All of the exhibits presented by Ricci postdate Ricci's purchase of the Lincoln and therefore fail to demonstrate Rohr-Max's knowledge of the alleged discrepancy at the time of

sale. Ricci admits he obtained the invoice from the oil-change shop *after* purchase, and that he did not expect Rohr-Max to undergo an "exhaustive search trying to find [records.]" (Resp. at 8.) The 2016 Carfax report is also the first Carfax report indicating a possible discrepancy. The 2016 report, however, is irrelevant to Ricci's claims because it came out after the date of purchase and therefore could not have put Rohr-Max on notice or support any intent to defraud. Also, where the 2016 report states that there is a "Mileage Inconsistency," on September 13, 2010 of 105,297 miles, in bold and to the right is this disclaimer: "MILEAGE INCONSISTENCY The mileage reported here conflicts with this vehicle's odometer history. Ask a mechanic or the seller to confirm the actual mileage – this entry may just be a clerical error." (Resp. Ex. 38, at 68.) The rest of the report shows an escalating mileage pattern: 61,672 (July 6, 2009), 61,760 (9/23/2009); 68, 418 (4/15/2013); 68,441 (7/29/2013). Therefore, the 105,297 mileage that is shown on 9/13/2010 is flagged as a possible clerical error. Aside from the report flagging the mileage as a possible clerical error, logic also supports this in that the car would have had to travel nearly 42,000 miles in eleven months. Regardless of logic, the report was not one that was generated prior to the purchase and therefore could not have given notice to Rohr-Max. The report that was run prior to the sale indicates no anomaly nor any mileage inconsistency. Ricci next presents the repair invoices to show the alleged poor condition of the car as support that Rohr-Max should have had notice of its condition. In the span of approximately three years, Ricci managed to drive approximately 30,000 miles and spend a little less than $ 3,000.00 in repairs.

Ricci cites to case law that explains the requirement of fraudulent intent, but then provides no analysis beyond the blanket conclusion that, "[t]hrough the facts and the Defendant's action, it can be seen that the Defendant did, and continues to, willfully suppress factual

information and subsequently cause harm." (Resp. at 6.) It's not clear to which action Ricci refers, and even less clear how Rohr-Max *continues* to suppress information. Indeed, Rohr-Max conducted an inspection in front of Ricci and Ricci's then counsel and that inspection showed that the alleged tampering did not occur. This led to his counsel withdrawing from the case. Ricci's other citations to case law are similarly unpersuasive because they only address his state law claims and fails to address the federal claims at issue on summary judgment. *See Miller v. William Chevrolet* 762 N.E.2d 1 (1st Dist. 2001);[7] *see also Duran v. Leslie Oldsmobile*, 229 Ill. App.3d 1032 (2d Dist. Ill. App. Ct. 1991).[8]

Here, not a single fact suggests that Rohr-Max had the requisite intent. *See id.* at 806 (dealership's failure to recognize dashboard had been removed, indicating possible odometer tampering, was not more than mere negligence and therefore insufficient to show intent to defraud); *see also Diersen*, 110 F.3d at 488 ("[o]ne could perhaps argue in light of the car's age, the [dealership] ought to have conducted further inquiry into the car's mileage" but mere negligence is not enough); *see also e.g., Patterson v. Dempsey Dodge Chrysler-Jeep, Inc.*, No. 04 C 4164, 2005 WL 1950393, at *4 (N.D. Ill. Aug. 10, 2005) (dealership was not liable when it purchased the used car and the original seller did not disclose odometer issues). Without any

---

[7] Not only does the case only analyze state law claims; moreover, the court actually found that the concealment claim should be dismissed for lack of proof that the dealership failed to disclose known material facts to the buyer. There was also more clearly a triable issue of fact with regard to the fraud in *Miller*: the purchaser, not wanting to buy a car that had been previously used by a rental company, relied on the dealership's statement that the car had been "executive driven," which the purchaser understood to mean that it had only been driven by employees of the dealership. The dealership knew that Enterprise Rental was the previous owner of the car and never disclosed the information. *Id.* at 648.

[8] Ricci also cites to a series of cases to suggest that Rohr-Max was reckless, but none of the cases are factually analogous. He cites to *Resolution Trust Corp. v. Franz* for a definition of recklessness, but the case is factually irrelevant and concerns a loan association's claims against its officers and directors. 999 F. Supp. 1128 (N.D. Ill. 2013). The other citations similarly do not provide any factual support. *See Ziarko v. SOO Line Railroad*, 161 Ill.2d 267 (1994) (court analyzed Joint Tortfeasor Contribution Act when a truck driver sued railroad company for injuries sustained in collision); *see also Rowe v. Frazer*, 227 N.E. 2d 781, 786 (Ill. App. 1967) (court addressed an action arising from a car accident in which the victim charged the driver with willful and wanton misconduct related to her driving).

facts to support intent to defraud, summary judgment is appropriate. *See, e.g. Jones*, 848 F.2d at 809.

   B. Breach of Warranty Claims

Ricci makes two admissions in his Response memorandum: (1) there were no warranties at the time of sale and (2) he never provided any notice to Rohr-Max of his suspicions of a mileage discrepancy before filing the lawsuit. For both of these reasons, Rohr-Max's motion for summary judgment on the warranty claims is granted.

First, Ricci admits that the bill of sale stated the car was sold "as is." *See Pelc v. Simmons*, 249 Ill. App. 3d 852, 856-57 (1993) (where a vehicle had a sticker stating "sold as is," the seller is relieved of implied warranties); *see also Basselen v. Gen. Motors Corp.*, 341 Ill. App. 3d 278, 289 (2003) (quoting 810 ILCS 5/2-316(3)(a) (West 1996) ("all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."). The contract Bill of Sale and Buyer's Guide document were marked as is. (Def.'s SMF at ¶ 5; Battista Aff. ¶ 25.) Battista, as a corporate director of Rohr-Max, attests pursuant to Rule 803(6) that these documents, the Bill of Sale and Buyer's Guide, are "kept in the course of a regularly conducted activity of [the] business." Fed. R. Evid. 803(6). In response to the motion for summary judgment, Ricci also does not dispute that no warranties existed. He only responds to the fact that the bill of sale states he purchases the car "as is" by making conclusory statements that Rohr-Max made misrepresentations regarding the odometer.

Next, Ricci did not provide any notice of his complaints about the mileage prior to filing the lawsuit. Section 2–607 of the UCC mandates that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred

18

from any remedy." 810 ILCS 5/2–607(3)(a) (West 1994). For purposes of determining adequate notice under the UCC, courts divide plaintiffs into three categories: (1) merchant buyers; (2) consumer buyers who did not suffer personal injuries; and (3) consumer buyers who did suffer personal injuries. *Connick v. Suzuki Motor Co., Ltd., et al.,* 675 N.E.2d 584, 590 (Ill. 1996) (internal citations omitted.) "Only a consumer plaintiff who suffers a personal injury may satisfy the section 2–607 notice requirement by filing a complaint stating a breach of warranty action against the seller." *Id.* (citing *Goldstein v. G. D. Searle & Co.*, 378 N.E.2d 1083, 1089 (Ill. App. Ct. 1978).) "The reason for this distinction is that where the breach has not resulted in personal injury, the UCC indicates a preference that the breached be cured without a lawsuit." *Id.* at 590-1. Ricci does not allege any personal injuries, therefore the filing of his lawsuit alone does not constitute sufficient notice. *See, e.g., id.* at 589 (holding that the plaintiffs did not allege any personal injuries, so the Section 2-607 notice requirement was not met by filing a breach of warranty complaint).

Ricci admits that he did nothing else to notify Rohr-Max at all prior to filing, and therefore Rohr-Max did not have the opportunity to cure and Ricci's warranty claims fail. *See, e.g., Reyes v. Mcdonald's Corp.*, No. 06 C 1604, 2006 WL 3253579, at *3 (N.D. Ill. Nov. 8, 2006) (quoting *Connick,* 675 N.E.2d at 590) ("The notice requirement of § 2-607 'is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer.'")

C. Supplemental Jurisdiction over Counts II and III

Rohr-Max asserts that if the federal odometer claim is dismissed and the warranty claims are dismissed, then the Court should not retain jurisdiction over the pending state law claims.[9]

---

[9] And, even if the Court were to only dismiss the federal odometer claim, as Rohr-Max points out, the Court would no longer have jurisdiction over the remaining claims because the Court does not have jurisdiction over the warranty

The Seventh Circuit admonishes that normally when all federal claims fall out before trial, the district court should relinquish its pendent jurisdiction. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"); *see also Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) (noting in a case with federal jurisdiction under Magnuson–Moss, that normally district courts should relinquish jurisdiction over pendent state-law claims when all federal claims are dismissed before trial.). Because the Court grants summary judgment against the Plaintiff on the federal odometer claims and the warranty claims, the Court declines to exercise jurisdiction over the state law claims.

## CONCLUSION

For the foregoing reasons, Defendant, Rohr-Max, Inc.'s Motion for Summary Judgment is granted on Counts I, IV and V. The Court declines to exercise jurisdiction over the state law claims.

Date: 3/31/2017

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

---

claims under the Magnusson-Moss Warranty Act. The Magnusson-Moss Warranty Act requires that Plaintiff plead an amount in controversy in excess of $50,000. 15 U.S.C. §§ 2301-12. Under the applicable law in this Circuit, the formula for calculating the amount in controversy is the replacement cost minus the value of the used car minus the use value obtained from the allegedly defective car. *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406-406 (7th Cir.2004); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir.1998). Ricci's warranty claims do not provide federal question or federal law jurisdiction as this vehicle was priced below $50,000, which is the damages required for federal Magnuson Moss Warranty Act jurisdiction, so if the federal odometer claim is dismissed, the Court no longer has jurisdiction. The Lincoln MKX was sold for $18,000.